**LATHAM & WATKINS LLP**
ANDREW M. GASS (SBN 259694)
Andrew.Gass@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600

SARANG VIJAY DAMLE (*pro hac vice* forthcoming)
Sy.Damle@lw.com
ELANA NIGHTINGALE DAWSON (*pro hac vice* forthcoming)
Elana.Nightingaledawson@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200

LUKE A. BUDIARDJO (*pro hac vice* forthcoming)
Luke.Budiardjo@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 751-4864

**MORRISON & FOERSTER LLP**
JOSEPH C. GRATZ (SBN 240676)
JGratz@mofo.com
DANIEL R. MELLO JR. (SBN 325714)
DMello@mofo.com
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for OPENAI, INC., OPENAI GP LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION LLC, OPENAI GROUP PBC, and OPENAI HOLDINGS LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

TED ENTERTAINMENT, INC., MATT FISHER, AND GOLFHOLICS, INC., EACH INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

v.

OPENAI, INC., OPENAI GP LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, OPENAI GROUP PBC, AND OPENAI HOLDINGS, LLC,

Defendants.

Case No. 5:26-cv-2935-BLF

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Judge: Hon. Beth Labson Freeman
Date: December 17, 2026
Time: 9:00 A.M.
Place: Courtroom 1, 5th Floor

Action Filed: April 3, 2026

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 2
A. The Alleged TPMs Control Copying, Not Access. ..... 2
1. Recasting "the work" as "the file" cannot be reconciled with MDY. ..... 2
2. MDY adopted Lexmark's "alternate route" principle as binding Ninth Circuit law. ..... 3
3. The CAC alleges no lock on access and no authorized key. ..... 4
B. The Dual-Function Principle Does Not Excuse the Absence of an Access-Control Allegation. ..... 5
C. The Non-Binding Decisions Plaintiffs Cite Do Not Displace MDY. ..... 7
D. None of the Five TPMs Controls Access. ..... 9
E. Plaintiffs Fail to Allege That the TPMs Were in Place When OpenAI's Alleged Downloading Occurred ..... 10
III. CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Augustus v. Cnty. of Los Angeles*,
No. 23-55312, 2024 WL 743783 (9th Cir. 2024) .......... 10

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) .......... 6

*Cordova v. Huneault*,
817 F. Supp. 3d 819 (N.D. Cal. 2026) .......... 8, 9

*Craigslist, Inc. v. Naturemarket, Inc.*,
694 F. Supp. 2d 1039 (N.D. Cal. 2010) .......... 10

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) .......... 3, 4, 5, 6

*Ets-Hokin v. Skyy Spirits, Inc.*,
225 F.3d 1068 (9th Cir. 2000) .......... 2

*Hattler v. Ashton*,
No. 16-cv-4099-JAK, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) .......... 2, 6, 7

*Justice v. Suno, Inc.*,
No. 25-11739-FDS, 2026 WL 2445362 (D. Mass. Aug. 20, 2026) .......... 8

*Justice v. Uncharted Labs, Inc.*,
No. 25 Civ. 5026 (AKH), 2026 WL 1430232 (S.D.N.Y. May 21, 2026) .......... 9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004) .......... 1, 3, 4

*MDY Industries, LLC v. Blizzard Entertainment, Inc.*,
629 F.3d 928 (9th Cir. 2010) .......... *passim*

*RealNetworks, Inc. v. Streambox, Inc.*,
No. 2:99-cv-02070, 2000 WL 127311 (W.D. Wash. Jan. 18, 2000) .......... 4, 5

*Reddit v. SerpApi LLC*,
No. 25 Civ. 8736 (PAE), 2026 WL 2210094 (S.D.N.Y. July 31, 2026) .......... 3, 4, 5

*Sony Music Entertainment v. Uncharted Labs, Inc. d/b/a Udio.com*,
No. 24 Civ. 4777 (AKH), 2026 WL 1019199 (S.D.N.Y. Apr. 15, 2026) .......... 9

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) .......... 11

*Ted Entertainment, Inc. v. Snap, Inc.*,
No. 2:26-cv-00754-AB-MBK, 2026 WL 2435349 (C.D. Cal. Aug. 19, 2026) ............... 5, 7, 8

*Ticketmaster L.L.C. v. Prestige Entm't, Inc.*,
306 F. Supp. 3d 1164 (C.D. Cal. 2018) ............................................................. 10

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
507 F. Supp. 2d 1096 (C.D. Cal. 2007) ............................................................. 10

*Universal City Studios, Inc. v. Corley*,
273 F.3d 429 (2d Cir. 2001) ............................................................................... 7

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*,
633 F. Supp. 3d 650 (D. Conn. 2022) ................................................................ 8

**Statutes**

17 U.S.C.
§ 1201 ........................................................................................................ 2, 10
§ 1201(a) ................................................................................................ *passim*
§ 1201(b) ................................................................................................ *passim*

## I. INTRODUCTION

Plaintiffs' Opposition (ECF 34, "Opp.") concedes the fact that resolves this motion: anyone with a web browser can watch Plaintiffs' videos on YouTube. Class Action Complaint ("CAC") ECF 1 ¶ 35. Not once do Plaintiffs allege that OpenAI—or anyone else—was ever barred from viewing their works. Instead, Plaintiffs contend that YouTube's technological protection measures ("TPMs") control "access" because they restrict downloading the underlying video files. Opp. at 12. But Section 1201(a) does not reach measures that restrict only copying. Rather, it reaches measures that control access to a copyrighted work in the first place. Measures that leave the work freely viewable and restrict only what happens next are copy controls, addressed by § 1201(b)—not § 1201(a). The Ninth Circuit drew precisely this line in *MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928 (9th Cir. 2010), adopting the Sixth Circuit's reasoning in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004): a measure does not "control access" to a work that remains freely accessible through an alternate route.

No amount of relabeling can transform a copy control into an access control. Plaintiffs try anyway, advancing two theories to recast their copy-control allegations as the access-control claims § 1201(a) requires. First, they redefine "the work" as the particular digital file on YouTube's servers, so that any restriction on retrieving that file becomes an access control. Opp. at 11-12. Second, they recharacterize YouTube's anti-downloading measures as an "always present" technological gate that every viewer passes through, even unknowingly—but the background mechanics they describe (tokens, signed URLs, data reconstruction) are indistinguishable from the routine steps involved in loading any web page. *Id.* at 9. Both theories fail—and so does every other argument in the Opposition for five independent reasons: (1) the alleged TPMs are copy controls, not access controls, under *MDY* and *Lexmark*; (2) the dual-function principle does not excuse the absence of an access-control allegation; (3) the non-binding decisions Plaintiffs invoke do not conduct the analysis *MDY* requires; (4) a TPM-by-TPM analysis confirms that none controls access; and (5) the Complaint fails to allege the TPMs were even in place when the alleged circumvention occurred. None of this turns on disputed

facts. The question is one of statutory classification that is ripe for decision now. For these reasons and those stated in OpenAI's Motion to Dismiss (ECF 24, "MTD"), the Court should dismiss the CAC with prejudice.

## II. ARGUMENT

Plaintiffs' Opposition confirms the deficiency at the heart of the Complaint: every measure Plaintiffs identify restricts copying, not access, and no relabeling can change that. Each of the Opposition's arguments fails independently, for the reasons set forth below.

### A. The Alleged TPMs Control Copying, Not Access.

1. Recasting "the work" as "the file" cannot be reconciled with *MDY*.

Plaintiffs argue that § 1201 "operates upon copies" and that a measure controlling retrieval of "the work as embodied in a particular copy" is therefore an access control. Opp. at 14. But every technological measure operates on some copy. The statutory question is not whether a measure touches a copy; it is whether the measure controls the public's ability to access the copyrighted work. *See MDY*, 629 F.3d at 952–54 (classifying Warden differently as to different works on undisputed facts); *Hattler v. Ashton*, No. 16-cv-4099-JAK (KSx), 2017 WL 11634742, at *5–8 (C.D. Cal. Apr. 20, 2017) (dismissing § 1201(a) claim on allegations that the measures "restricted downloading, but not general access"). Plaintiffs' own description of YouTube's TPMs—"detect and block access to files for unauthorized downloading," CAC ¶ 46; "deter direct downloading or bulk extraction," *id.* ¶ 49—confirms that YouTube's TPMs are copy controls, and not access controls.

The Copyright Act uses "work" to mean "original works of authorship"—the creative expression, not a particular digital container. *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1079 (9th Cir. 2000). Plaintiffs' attempt to limit "the work" to "[t]he underlying audiovisual files," Opp. at 14–15, is a sleight of hand that converts every restriction on downloading into an "access control" by redefining what is being accessed.

*MDY* foreclosed this move on materially identical facts. Blizzard's Warden qualified as an access control only for World of Warcraft's dynamic non-literal elements—the real-time multiplayer experience that existed nowhere but on Blizzard's servers and could not be perceived

by any other means. 629 F.3d at 942-43, 954. But Warden was not an access control for World of Warcraft's "literal elements" and "individual non-literal elements"—copyrighted expression that was also present on the player's hard drive—because the player's hard drive provided an alternate route to access the same expression without ever passing through Warden. *Id.* at 952–53.

Plaintiffs' "work as embodied in a copy" theory would require the opposite result: the server-side copy contained the literal and non-literal elements, Warden restricted access to the server-side copy, and on Plaintiffs' logic, that should have sufficed. The Ninth Circuit flatly rejected that reasoning. Plaintiffs' audiovisual works, by contrast, are fully perceptible to anyone who loads the YouTube page. CAC ¶¶ 35, 65. *MDY* asks not whether the defendant obtained a copy, but whether the copyrighted expression was already reachable without confronting an access gate. It was.

This principle also disposes of Plaintiffs' reliance on *VidAngel*'s analogy that decrypting a disc "to obtain a digital copy" is like "breaking into a locked room to obtain a copy of a [movie]." Opp. at 12 (quoting *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 864 (9th Cir. 2017)). In *VidAngel*, the room was locked. Content Scramble System ("CSS"), Advanced Access Content Systems ("AACS") and optional "BD+" encrypted the content itself, and without decryption there was no intelligible movie. *VidAngel*, 869 F.3d at 854. A consumer who owned a DVD could not watch the film without a licensed DVD player, as the decryption key was distributed only to licensed manufacturers. *Id*. at 853–54 & n.1. Here, no key is needed: anyone with a browser can watch the video. That factual distinction is dispositive. *VidAngel* held that circumventing encryption to obtain a digital copy violated § 1201(a) *because there was no unencrypted route to the work. Id*. at 863–64. Here, the unencrypted route is the default: YouTube streams every video to every visitor, without any decryption step by the viewer.

2. <u>*MDY* adopted *Lexmark's* "alternate route" principle as binding Ninth Circuit law.</u>

Plaintiffs try to neutralize *Lexmark* by invoking *Reddit v. SerpApi LLC*, No. 25 Civ. 8736 (PAE), 2026 WL 2210094 (S.D.N.Y. July 31, 2026), for the proposition that *Lexmark*'s "alternate route" reasoning is merely dicta. But the Ninth Circuit in *MDY* squarely adopted *Lexmark*'s

principle: that a TPM does not effectively control access where it restricts one route but leaves another unobstructed. 629 F.3d at 952–53. An out-of-circuit district court's characterization of *Lexmark* cannot override the Ninth Circuit's adoption of it.

Indeed, *Reddit* underscores OpenAI's point. There, the court *dismissed* the plaintiff's § 1201(b) claim, holding that SearchGuard was purely an access control—it "gates" automated users from reaching content at all—and not a copy control. *Reddit*, 2026 WL 2210094, at *23. YouTube's TPMs work in the opposite direction: they allow everyone to reach and perceive the content, and restrict only what users do afterward. Under *Reddit's* own framework, that is a copy control, not an access control.

Plaintiffs also rely on *UMG Recordings, Inc. v. Suno, Inc.*—an out-of-circuit district court opinion—for the argument that there is "no unprotected 'front door'" because ordinary playback itself passes through the rolling cipher. Opp. at 13 (citing 2026 WL 2410184, at *4 (D. Mass. Aug. 18, 2026)). But under Plaintiffs' own allegations, the rolling cipher—which Plaintiffs themselves describe as "imped[ing] an ordinary user from creating a permanent, unrestricted download of audiovisual content made available on YouTube only for streaming," CAC ¶ 51—is a copy control under *MDY's* framework: it impedes downloading while leaving viewing untouched.

3. <u>The CAC alleges no lock on access and no authorized key.</u>

Section 1201(a)(3)(B) does not ask merely whether some process accompanies the exchange of data; it asks whether a TPM in its "ordinary course of operation" "requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B). Two elements must be pled: (1) a lock that gates access; and (2) a key that a requester must present with the copyright owner's authority. Without authorization criteria separating those who may enter from those who may not, there is no access control—just an automated handshake.

Every case sustaining a § 1201(a) claim involves a measure that screens users. In *VidAngel*, decryption keys were licensed, and a customer needed a licensed DVD player to watch the movie. 869 F.3d at 853. In *RealNetworks, Inc. v. Streambox, Inc.*, the "Secret Handshake"

was known only to RealServers and authorized RealPlayers, and without it, the server would not "stream the content it holds." No. 2:99-cv-02070, 2000 WL 127311, at *2 (W.D. Wash. Jan. 18, 2000). In *Reddit*, SearchGuard screened every query and blocked unrecognized sources from reaching the results at all. 2026 WL 2210094, at *3.

Plaintiffs allege nothing of the sort. On their own pleading, YouTube delivers playback data, including "a scrambled signature that must be processed to produce a valid media request URL," to every user who requests the page, and every such user can watch the video. CAC ¶¶ 35, 50–51. Nobody is screened; no license is required; no credentialing procedure distinguishes one requester from another. What Plaintiffs describe is the ordinary mechanics of content delivery on the web—not a lock and key.

Plaintiffs invoke *Snap* for the proposition that "[n]othing in § 1201(a) requires an access control to take the form of a paywall, password prompt, or other measure requiring affirmative user input." *Ted Entertainment, Inc. v. Snap, Inc.*, No. 2:26-cv-00754-AB-MBK, 2026 WL 2435349, at *4 (C.D. Cal. Aug. 19, 2026). OpenAI has never contended that a visible barrier or manual user input is required; for example, in *VidAngel*, the decryption key embedded in the user's licensed DVD player was applied automatically. Nevertheless, § 1201(a) does require that a key—visible or not—be required to gain access, and that access be granted or withheld according to some authorization criteria. Where every request is granted and no one is turned away, there is no gate—and no access control.

### B. The Dual-Function Principle Does Not Excuse the Absence of an Access-Control Allegation.

Plaintiffs argue at length that a single TPM may constitute both an access control and a copy control. Opp. at 16 (citing *VidAngel*, 869 F.3d at 864). OpenAI has never argued otherwise. MTD at 14. But "may be both" is not "is always both." For Plaintiffs' claim to survive, they must plead that the measure controls access in the first instance. *See VidAngel*, 869 F.3d at 864. Where a measure "does nothing to prevent access to the plain text of the work, but is designed to prevent that work from being copied," § 1201(a) does not apply. *MDY*, 629 F.3d at 946-47.

*VidAngel* illustrates the distinction. There, CSS/AACS/BD+ encryption rendered the content unintelligible without a licensed decryption key: no key, no movie. 869 F.3d at 853–54. The same encryption *also* prevented copying. The court held the measures were dual-function because they independently satisfied both § 1201(a) and § 1201(b). *Id.* at 864. Critically, the dual-function finding rested on the court's independent determination that the *same* encryption both prevented viewing *and* prevented copying. *Id.* That reasoning has no application here. YouTube's TPMs do not render Plaintiffs' videos unintelligible; they do not withhold the creative expression from anyone. They restrict downloading—and downloading alone—which is entirely consistent with *VidAngel's* framework. Indeed, *VidAngel* itself recognized that the statutory distinction between access controls and copy controls must be preserved precisely because a measure may control one and not the other. *See id.* ("To be sure, 'unlawful circumvention under § 1201(a)—descrambling a scrambled work and decrypting an encrypted work—are acts that do not necessarily infringe or facilitate infringement of a copyright.' Thus, a defendant could decrypt the TPMs on the Studios' discs on an unlicensed DVD player, but only then 'watch . . . without authorization, which is not necessarily an infringement of [the Studios'] exclusive rights under § 106.'").

Plaintiffs have pled only the copy-control half of the equation. Downloading is the exercise of the § 106 reproduction right. *See Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013). A measure aimed at preventing downloading therefore protects "a right of a copyright owner," 17 U.S.C. § 1201(b)(2)(B), which is the statutory definition of a copy control. Plaintiffs' description of YouTube's TPMs places the measures squarely on the § 1201(b) side of the line.

*Hattler* is directly on point: the court dismissed a § 1201(a) claim where, as here, the works were freely viewable online and the TPMs restricted only downloading. *See Hattler v. Ashton*, No. 16-cv-4099-JAK (KSx), 2017 WL 11634742, at *5-7 (C.D. Cal. Apr. 20, 2017). Plaintiffs' attempt to distinguish *Hattler* because it predates *VidAngel* is unavailing. Opp. at 16–17. *Hattler* clarified that TPMs that permit viewing but restrict downloading are addressed by § 1201(b), not § 1201(a). 2017 WL 11634742, at *6–8. *MDY* adopted the same rule. *VidAngel*

did not disturb it. *Hattler* expressly declined to extend the holding from *Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001), reasoning that encryption designed "to prevent the unauthorized viewing and copying of motion pictures" was distinguishable from works that "were accessible for viewing to the general public." *Hattler,* 2017 WL 11634742, at *7. That is this case.

Plaintiffs contend that OpenAI "invok[es] fair use as though Plaintiffs had pleaded infringement" and makes a fair-use defense to circumvention. Opp. at 3; *see id.* at 17. That misreads OpenAI's argument. OpenAI's point is not that fair use excuses circumvention of an access control. It is that Congress deliberately omitted an act-of-circumvention prohibition from § 1201(b) because circumventing a copy control leads to copying, which the Copyright Act already governs—complete with fair use and other defenses. *MDY*, 629 F.3d at 945. That deliberate omission confirms where Congress drew the line: a measure aimed at preventing downloading belongs in § 1201(b). Plaintiffs' contrary reading would render § 1201(b) superfluous, a result the Ninth Circuit has already rejected. *Id.* at 946.

Plaintiffs respond that Congress addressed concerns about noninfringing circumvention through the triennial rulemaking process, not through the access/copy-control distinction. Opp. at 18. But the rulemaking process presupposes that the measure has been correctly classified as an access control in the first place. The exemptions relieve users from liability for circumventing access controls to make noninfringing uses. They do not speak to whether a given measure is an access control at all.

**C. The Non-Binding Decisions Plaintiffs Cite Do Not Displace *MDY*.**

Plaintiffs lean heavily on a handful of recent district court decisions, none of which is binding, and none of which conducts the statutory analysis *MDY* requires.

***Snap.*** The court in *Snap* found that the alleged TPMs were access controls because it equated access via YouTube's "authorized streaming architecture" with restricting access to the copyrighted work. *Snap*, 2026 WL 2435349, at *4. That conclusion collapses the very distinction *MDY* draws between "protect[ing] access to a copyrighted work," under § 1201(a), and "protect[ing] the traditional copyright rights of the copyright owner," under § 1201(b). *MDY*,

629 F.3d at 947.

*Snap* also held that IP blocking, rate limiting, and CAPTCHAs qualify as access controls because they "revoke access if a secondary check determines that access was unauthorized." *Snap*, 2026 WL 2435349, at *6 (citing *MDY*, 629 F.3d at 943). But *MDY* held that Warden controlled access to certain dynamic elements by *initially* scanning to gate access and then performing additional *secondary* checks later, after a player was already connected to World of Warcraft's servers. *MDY*, 629 F.3d at 954. The Ninth Circuit considered the initial scan and secondary checks together, and did not hold that secondary restrictions alone are sufficient to control access. *See id*. at 943 ("Our analysis considers Warden's scan.dll and resident components together because the two components have the same purpose: to prevent players using detectable bots from continuing to access [World of Warcraft] software."). Here, there is no initial gate: the videos play for everyone. Without an initial lock on access, a later-triggered rate limit or CAPTCHA is not a "secondary check"—it is a copy-protection measure, nothing more.

***Suno* and *Justice*.** These two out-of-circuit decisions adopted similar reasoning without grappling with MDY's framework. *UMG*, 2026 WL 2410184; *Justice v. Suno, Inc.*, No. 25-11739-FDS, 2026 WL 2445362 (D. Mass. Aug. 20, 2026). The *UMG* court declined to decide whether yt-dlp circumvented the rolling cipher. 2026 WL 2410184, at *1. Neither decision is binding in this Circuit.

***Yout.*** *Yout* is non-binding, currently on appeal, and procedurally inverted: the declaratory-judgment plaintiff bore the burden of negating every element of a § 1201(a) claim. *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650, 655-59, 662-75 (D. Conn. 2022). The question at the pleadings stage was whether the allegations fully negated any possible claim, rather than, as here, whether the allegations establish a claim. Here, by contrast, Plaintiffs bear the burden of stating a claim, and the detailed allegations in the CAC confirm that the measures they identify do not control access–whether at the file-URL or page-URL level.

***Cordova***. *Cordova* did not analyze the distinction between § 1201(a) and § 1201(b), did not address *MDY*'s alternate-route framework, and is inconsistent with both. *Cordova v.*

*Huneault*, 817 F. Supp. 3d 819, 832-35 (N.D. Cal. 2026); *MDY*, 629 F.3d at 952-54. To the extent *Cordova* treats a measure "intended to prevent unauthorized downloading" as sufficient to plead an access control, that reasoning conflicts with *MDY's* instruction that the measure must control *access* to the copyrighted work. *Cordova*, 817 F. Supp. 3d at 834; *MDY*, 629 F.3d at 952-54.

***Uncharted Labs.*** In *Sony Music Entertainment v. Uncharted Labs, Inc. d/b/a Udio.com*, No. 24 Civ. 4777 (AKH), 2026 WL 1019199 (S.D.N.Y. Apr. 15, 2026) and *Justice v. Uncharted Labs, Inc.*, No. 25 Civ. 5026 (AKH), 2026 WL 1430232 (S.D.N.Y. May 21, 2026), the court deferred classification because the pleadings did not adequately describe how the TPMs functioned. Here, Plaintiffs describe each TPM in detail—and that detail confirms they are copy controls.

**D. None of the Five TPMs Controls Access.**

Applying the statutory framework TPM-by-TPM confirms that none controls the public's ability to access Plaintiffs' works. Plaintiffs' own Complaint is the best evidence: YouTube's measures "detect and block access to files for unauthorized *downloading*." CAC ¶ 46 (emphasis added).

**Rolling Cipher.** The rolling cipher "impedes an ordinary user from creating a permanent, unrestricted download." CAC ¶ 51. It does not impede anyone from watching the video—which is why Plaintiffs never allege otherwise. A measure that blocks downloading while leaving viewing untouched is a copy control.

**Session-bound, short-lived URLs.** These URLs expire after a period of time or when a session ends. CAC ¶ 57. By Plaintiffs' own allegations, they affect users only *after* they have already accessed the video. *Id.* A measure that revokes a download link after initial access is not an access control.

**IP blocking and rate limiting.** These measures activate only when a requester "exceeds defined thresholds." CAC ¶ 53. This is a revocation of a download capability, not a check performed before access is granted. Moreover, the Copyright Office has concluded that rate-limit enforcement systems do not effectively control access because they do not require "the

application of information, or a process or a treatment" to gain access; they require users only to refrain from particular conduct. U.S. Copyright Off., *Section 1201 Rulemaking: Ninth Triennial Proceeding to Determine Exemptions to the Prohibition of Circumvention* 125 (Oct. 2024), https://www.copyright.gov/1201/2024/2024_Section_1201_Registers_Recommendation.pdf (finding these sorts of "rate limit enforcement systems do not effectively control access to a work as contemplated by section 1201.").

**Proof-of-origin tokens.** These tokens are generated "during playback," and prevent software from "retriev[ing]" (*i.e.*, copying) audiovisual files. CAC ¶¶ 61-62. A token generated *during* playback cannot be a precondition *for* access.

**CAPTCHA.** YouTube's CAPTCHAs are triggered only by "automated or suspicious activity." CAC ¶ 59. In every case holding a CAPTCHA was an access control, the CAPTCHA was presented to *every* user as a precondition to access. *See Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1112 (C.D. Cal. 2007) (a CAPTCHA was presented every time "the user makes a ticket request on ticketmaster.com"); *Ticketmaster L.L.C. v. Prestige Entm't, Inc.*, 306 F. Supp. 3d 1164, 1174 (C.D. Cal. 2018) (same); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1048 (N.D. Cal. 2010) (finding Craigslist employs CAPTCHAs every time a user generates an account or ad). Here, the ordinary user never encounters a CAPTCHA. It is a rate limiter—not an access gate.

### E. Plaintiffs Fail to Allege That the TPMs Were in Place When OpenAI's Alleged Downloading Occurred.

Plaintiffs assert that they need not allege when YouTube deployed each TPM, pointing to *Snap's* observation that it suffices to allege the TPMs were in place at the time of scraping. Opp. at 24 (citing *Snap*, 2026 WL 2435349, at *7). But Plaintiffs have made no factual allegation—even on information and belief—as to when YouTube implemented any of the five TPMs. *See Augustus v. Cnty. of Los Angeles*, No. 23-55312, 2024 WL 743783, at *1 (9th Cir. 2024) (dismissing complaint where allegations were "either [1] conclusory and lack supporting facts or [2] rely on speculation").

Plaintiffs' invocation of *Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017), is misplaced. "Information and belief" pleading is permitted only where the relevant facts lie within the defendant's knowledge. The date and time YouTube deployed its TPMs as to the videos at issue is not within OpenAI's knowledge—it is information about a third party's platform, and one that Plaintiffs claim to have relied on in choosing to upload their content. CAC ¶ 137. If these TPMs matter as much as Plaintiffs say, Plaintiffs should be able to allege when they were in place.

## III. CONCLUSION

Plaintiffs allege that YouTube makes their works freely viewable and employs measures to prevent the downloading of the underlying files. That is the textbook description of a copy control. Section 1201(a) reaches measures that lock a work away until an authorized key is supplied. It does not reach measures that permit full access and restrict only copying. If Plaintiffs believe OpenAI's downloading was unlawful, the Copyright Act provides a remedy—complete with its attendant defenses.

For the foregoing reasons, the Court should dismiss the CAC for failure to state a claim, and should do so with prejudice. No amendment can change the fact that anyone can watch Plaintiffs' videos on YouTube.

Dated: September 14, 2026

Respectfully submitted,

MORRISON & FOERSTER LLP

By: */s/ Joseph C. Gratz*
Joseph C. Gratz

LATHAM & WATKINS LLP

By: */s/ Sarang Vijay Damle*
Sarang Vijay Damle

*Attorneys for* OPENAI, INC., OPENAI GP LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION LLC, OPENAI GROUP PBC, and OPENAI HOLDINGS LLC